ORIGINAL

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Indiana

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| TOMMY GIBSON | ) | 1:18MJ 54 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____02/27/18 & 03/13/18____ in the county of ____Noble____ in the ____Northern____ District of ____Indiana____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | did knowingly distribute 5 grams or more of methamphetamine, a Schedule II controlled substance, on or about February 27, 2018; and did knowingly distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, on or about March 13, 2018. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

DEA SA Michael T. Foldesi
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____03/23/2018____

s/ Paul R. Cherry
*Judge's signature*

City and state: ____Fort Wayne, Indiana____

Paul R. Cherry, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT

Comes now your Affiant, Michael Foldesi of the Drug Enforcement Administration (DEA), first being duly sworn, now deposes and says:

Your Affiant has been a Special Agent with the DEA for approximately 26 years and has been assigned to the Fort Wayne office for approximately 20 years. Prior to being assigned to Fort Wayne, your Affiant was assigned to the DEA office in New York City, New York. Your Affiant has been involved in hundreds of drug investigations, including investigations involving controlled buys with confidential informants and the service of search warrants in drug investigations. Through this experience, your Affiant has therefore participated in a large number of investigations involving the manufacturing, trafficking, and distribution of illegal drugs and has become familiar with the methods of illegal drug traffickers. Your Affiant has been involved in the use of the following investigative techniques, among others: interviewing informants and cooperating witnesses, conducting physical surveillance, conducting short-term undercover operations, performing consensual monitoring and recording of both telephonic and non-telephonic communications, analyzing telephone pen register and caller identification system data, and the execution of search warrants which have led to seizures of contraband and evidence of criminal activity.

While working as an agent, your Affiant has also been involved in the investigation of various individuals and organizations involved in the manufacture, distribution, and use of controlled substances, especially methamphetamine. Your

1

Affiant has participated in the preparation of various affidavits and the execution of numerous search and arrest warrants for violations of federal and state drug laws. Your Affiant has consulted with other senior investigators who have authored affidavits in support of applications for pen register and trap and trace devices, as well as Title III applications/wiretaps. I have conducted surveillance operations and have become familiar with the methods used by individuals engaged in the manufacture, trafficking, possession, and use of controlled substances. I have directed the actions of confidential sources during drug investigations, and I have acted in an undercover capacity in drug operations, including the negotiation and hand-to-hand purchase of drugs. I have also spoken on numerous occasions with informants, suspects, and other experienced drug traffickers regarding the methods and practices of drug traffickers and drug trafficking organizations. I have monitored informants' conversations with drug traffickers, and have monitored drug-related conversations as part of controlled drug purchases. In light of the foregoing, I am familiar with the manner in which illegal drugs are manufactured, transported, stored, and distributed. I am also familiar with the methods of payment for such drugs, the methods of laundering and concealing of drug proceeds, and the methods of communication between drug traffickers.

On February 27, 2018, a confidential source (CS) working with the Noble County Sheriff's Department (NCSD) advised that CS could purchase ounce quantities of crystal methamphetamine from a Noble County drug dealer known to the CS as "Two-Tone." The CS knew this dealer's real name to be Tommy GIBSON

2

(GIBSON). The CS advised that GIBSON currently lives at a particular residence in Rome City, Indiana, which your Affiant knows to be in the Northern District of Indiana.    During the course of this investigation, the CS was shown a BMV photograph of GIBSON, and the CS identified "Two-Tone" as GIBSON. CS confirmed that, on numerous occasions in the past, CS has purchased crystal methamphetamine from GIBSON.

On February 27, 2018, the CS made a controlled purchase of an ounce of crystal methamphetamine from GIBSON. The CS advised investigators that CS previously discussed with GIBSON the purchase of one ounce of crystal methamphetamine, with a prior agreed purchase price of $800. Investigators met with the CS and performed a pre-buy search of the CS's person and vehicle, with no contraband being found. The CS was fitted with an audio recording and listening device, and the CS was provided with pre-recorded buy money. The CS called GIBSON at (260)585-3006, at which time GIBSON advised the CS to go to a particular trailer court in Albion, Indiana. GIBSON said that he would be waiting for the CS on his motorcycle at Lot-28 within this trailer court. Surveillance was established on the relevant trailer court, and the CS was followed by surveillance units to the trailer located at Lot-28, where GIBSON was waiting with his motorcycle for the CS. Upon arriving at the trailer on Lot-28, GIBSON entered the passenger's seat of the CS's vehicle, at which time GIBSON advised the CS to take a quick drive around the trailer court. During this drive around the trailer court, GIBSON conducted the drug transaction with the CS in the CS's vehicle, selling the CS an ounce of crystal methamphetamine for $800, which

3

GIBSON placed in the ashtray of the CS's vehicle. Upon completion of the drug transaction, the CS drove GIBSON back to the trailer at Lot-28, and the CS departed the area, followed by surveillance units to a predetermined meeting spot.

At the meet spot, the CS provided investigators with a clear bag containing a crystal-like substance believed to be methamphetamine. A subsequent post-buy search of the CS's person and vehicle was negative for contraband. The purchased item field tested positive for methamphetamine and weighed about 27 grams. In a debriefing, the CS confirmed that GIBSON provided the methamphetamine in exchange for the buy money. The buy recording corroborated the CS's information regarding this transaction.

Several hours after the CS conducted the methamphetamine deal with GIBSON, a NCSD deputy conducted a spot-check on GIBSON's residence in Rome City, and observed a dark-colored Harley Davidson motorcycle parked at this location. This motorcycle matched the description of the motorcycle that GIBSON had when he sold the CS the methamphetamine in the area of the Lot-28 residence.

On March 13, 2018, the CS performed another controlled buy of two ounces of crystal methamphetamine from GIBSON. Prior to conducting the buy, investigators performed a pre-buy search of CS's person and vehicle, finding no contraband. The CS was also provided with monitoring and recording equipment and $1,600 of pre-recorded buy money. In arranging the deal, the CS was originally instructed by GIBSON to come to GIBSON's house in Rome City to conduct the drug deal. While enroute to GIBSON's house in Rome City, the CS and GIBSON exchanged text

4

messages, and GIBSON said that he was going to conduct the deal at the same trailer as the prior deal, meaning Lot-28. Surveillance units then followed the CS to meet GIBSON at the same trailer on Lot-28.

Prior to conducting the drug deal, surveillance was established at GIBSON's residence in Rome City, Indiana. Prior to the transaction occurring, surveillance units observed a man matching GIBSON's description exiting this residence, entering a grey SUV, and departing the area. This SUV is registered to a woman known to be GIBSON's girlfriend at GIBSON's residence in Rome City, Indiana. Prior to the CS's arrival at the trailer on Lot-28, surveillance units noticed the grey SUV, which was previously observed departing GIBSON's residence, now parked in front of the trailer at Lot-28.

Upon the CS's arrival at the Lot-28 trailer, the CS observed GIBSON exiting the Lot-28 trailer and entering the passenger's seat of the CS's vehicle. The CS then drove around the trailer court with GIBSON in the CS's vehicle. While driving around the trailer court, GIBSON sold the CS two ounces of crystal methamphetamine for $1,600. Upon completion of the drug transaction, the CS drove GIBSON back to the trailer at Lot-28, and the CS dropped GIBSON off behind the trailer. Surveillance then observed GIBSON exiting the CS vehicle and walking towards the trailer at Lot-28. The CS departed the area, followed by surveillance units to a predetermined meet spot. At the meet spot, the CS handed investigators two plastic bags containing a crystal substance believed to be methamphetamine. Post-buy searches of the CS's person and vehicle were negative for contraband. The

5

purchased item field tested positive for methamphetamine and weighed about 60 grams. The buy recording and surveillance corroborated the CS's information about this transaction.

On March 22, 2018, a federal search warrant was executed at the Lot-28 residence in Albion, Indiana. Courtney MAGGERT (MAGGERT), who resides at this location, was present during the execution of the search warrant. While searching this location, investigators located a small amount of crystal methamphetamine and several hits of LSD inside the residence. MAGGERT advised investigators that the crystal methamphetamine and LSD belonged to her, and that GIBSON was the person who MAGGERT received the drugs from. MAGGERT told investigators that she knows GIBSON to be a methamphetamine dealer and that GIBSON would give MAGGERT one gram of methamphetamine a week for free. MAGGERT advised investigators that GIBSON has been at her house a lot lately, and he would step outside to briefly meet with people, then come back inside; however, MAGGERT said that she did not know for sure if he was briefly meeting with these people to sell methamphetamine to them or not. MAGGERT said that GIBSON has not worked since 2016, and that she has seen him sell eight-balls of methamphetamine to people.

Based upon your Affiant's training and experience, recent laboratory results for methamphetamine have generally shown purities of over 90% for "ice" or crystal methamphetamine, and as high as 100%; as a result, such high purities of methamphetamine are common in your Affiant's training and experience. The CS in this investigation purchased this form of methamphetamine from GIBSON. With a

6

purity in the range of 90%, your Affiant expects for the actual methamphetamine weights to be over 5 grams for the first buy and over 50 grams for the second buy.

Your Affiant has not included each and every fact known or provided by members of the DEA and other law enforcement agencies concerning the individual events described in this affidavit. The information contained in this affidavit is based on information provided to your Affiant by other law enforcement officers as well as your Affiant's personal observations.

Based upon the above information, your Affiant has probable cause to believe that, on or about February 27, 2018, and March 13, 2018, GIBSON did knowingly distribute a controlled substance, including 5 grams or more of methamphetamine and including 50 grams or more methamphetamine, respectively, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

The foregoing facts are true to the best of your Affiant's knowledge and belief. Further your Affiant sayeth naught.

Michael T. Foldesi
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me, this 23rd day of March, 2018.

s/ Paul R. Cherry

Honorable Paul R. Cherry
United States Magistrate Judge

7